UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| NATIONAL WRECKING CORPORATION, | * | |
| Plaintiff/Counter-Defendant, | * | |
| v. | * | Civil Action No. |
| | | 1:07-cv-00404-LMB-TCB |
| TURNER CONSTRUCTION COMPANY | * | |
| Defendant/Counter-Plaintiff | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

### NATIONAL WRECKING CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO STRIKE THE EXPERT REPORTS FILED BY TURNER CONSTRUCTION COMPANY

Plaintiff and Counter-Defendant National Wrecking Corporation ("National"), by and through counsel, respectfully submits this Memorandum of Points and Authorities in support of its Motion to Strike the Expert Reports filed by Defendant and Counter-Plaintiff Turner Construction Company ("Turner").

### INTRODUCTION AND SUMMARY OF ARGUMENT

This matter involves cross-claims between a general contractor, Turner, and an excavation subcontractor, National, relating to a construction project in Virginia. In part, Turner claims that National delayed the overall completion of the construction project and that National is responsible for costs associated with the delay. Specifically, Turner counterclaims for indemnity relating to $900,000 in liquidated damages included in a settlement that it reached with the project owner. Turner counterclaims further for its daily overhead related to its extended performance of the project. Finally, Turner counterclaims for over $600,000 in delay and delay mitigation costs incurred by its other subcontractors *after* National completed its work

and demobilized from the Project.

In support of its claims, Turner submitted two expert reports – the Lockhart Report and the Krafft Report. The Lockhart Report purports to calculate National's alleged delay to the overall project substantial completion. The second report purports to calculate Turner's daily general conditions rate for the project.

Federal Rule of Evidence 702 charges the Court with the responsibility of serving as a "gatekeeper" between expert testimony and the trier of facts. In this role, the Court must determine whether expert opinion is based upon a reliable or accepted methodology or sufficient facts and data. If the expert opinion is not based upon reliable or accepted methodology or sufficient facts then it must be excluded.

Here, the Lockhart Report should be stricken because it fails to apply the proper methodology to calculate delay as accepted by the construction industry and its fails to consider facts and data necessary for proper delay analysis. Specifically, the Lockhart Report does not considers *any* delay to the project except those it attributes to National. In other words, the Lockhart Report fails to consider all delays preceding, concurrent with, and succeeding the performance of National. As such, the Lockhart Report cannot be relied upon to prove that National, and National alone, is: (i) the proximate cause of the overall delay to substantial completion or (ii) responsible for any costs incurred to mitigate delays subsequent to National's departure from the job. As detailed below, the Lockhart Report's failure to consider all project delays is fatal to a legitimate schedule analysis and, accordingly, the Lockhart Report should be stricken.

Further, Federal Rule of Civil Procedure 26(a) carefully sets forth what disclosures a party must make when relying upon expert opinions. Namely, the party must disclose and

produce all documents considered by the expert including all drafts of the report, work product, and privileged information. Failure to make these disclosures is grounds to strike the expert reports. For both of its expert reports, Turner failed to meaningfully identify or produce all of the documents considered by their purported experts. Turner's failure to make these mandatory disclosures is prejudicial to National's ability to conduct discovery and properly prepare for trial. As such, the Court should strike both of Turner's expert reports.

## STATEMENT OF FACTS

1. On April 20, 2007, National filed a Complaint against Turner for claims arising out of the construction project known as the NRECA Phase II Building located in Arlington, Virginia (the "Project"). Specifically, National seeks its subcontract balance, the costs associated with Project change orders, and additional labor and lost productivity costs due to delays at the Project. (Compl. ¶¶5-18).

2. On May 23, 2007, Turner filed its Answer to National's Complaint and a Counterclaim against National in the amount of $1,300,000. (See Counterclaim). The crux of Turner's affirmative defenses and Counterclaim are delay damages and associated costs stemming from National's delays at the Project. (Counterclaim ¶¶7-10).

3. Specifically, Turner's Counterclaim alleges that National's delays resulted in $900,000 in liquidated damages against Turner, the vast majority of which are now being asserted against National in this action. (Counterclaim ¶¶8-9).

4. Further, Turner also asserts additional delay and delay mitigation damages against National, which include Turner's additional direct and indirect costs associated with the Project delays. (Counterclaim ¶10). Turner identified those damages in its responses to National's interrogatories:

3

- Miller & Long – acceleration and overtime: $171,220

- Modern Mosaic - acceleration and overtime: $100,803

- Tyler Mechanical - acceleration and overtime: $ 194,520

- Griffin Dewatering – extended performance: $40,290

- Additional Turner costs – extended general conditions: $4,718/day (See Facts ¶ 7).

5.      On or about June 13, 2007, National served Turner with National's First Request for Production of Documents by first class mail (the "Document Requests"). A true and correct copy of the Document Requests is attached as Exhibit 1. Among others, National requested production of the following documents: "[a]ll documents provided to, shown to, received from, or prepared by any person you retained or intend to retain as an expert and/or consultant including, but not limited to, fee arrangements, reports, and correspondence(s)." (Ex. 1, No. 4).

6.      On August 10, 2007, Turner produced an expert report entitled "Project Schedule Analysis" prepared by Robert M. Lockhart of Capitol Construction Consultants, Inc. (the "Lockhart Report"). A copy of the Lockhart Report is attached as Exhibit 2. The Lockhart concludes that National is responsible for 77 days of delay to the project schedule.

7.      Turner also produced an analysis of Turner's General Conditions Costs on the Project prepared by Matthew Krafft (the "Krafft Report"). A copy of the Krafft Report is attached as Exhibit 3. The Krafft Report concludes that Turner's daily rate for general conditions is $4,718.

## ARGUMENT

### I.   The Lockhart Report Should Be Excluded as it Does Not Meets the Requirements of Federal Rule of Evidence 702 for Admissibility.

Federal Rule of Evidence 702 allows expert evidence only under certain circumstances:

4

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise, if (1) ***the testimony is based upon sufficient facts or data***, (2) ***the testimony is the product of reliable principles and methods***, and (3) ***the witness has applied the principles and methods reliably to the facts of the case***. (Emphasis supplied).

Fed. R. Evid. 702.[1]

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court interpreted this rule as placing the court in a "gatekeeping role" between expert evidence and the trier of fact. Daubert, 509 U.S. at 589, 597. Rule 702 places upon trial judges an obligation to ensure "that an expert's testimony rests upon a reliable foundation" and that the proponent has established by a preponderance of the evidence that the expert's opinion is admissible. Id. at 593 n.10, 597.

### A. On its Face, the Lockhart Report Fails to Meet the Requirements of Federal Rule of Evidence 702.

As demonstrated below, the opinions offered in the Lockhart Report should be excluded because: (1) they are ***not*** the product of reliable principles, (2) they are ***not*** based on sufficient facts or data and (3) the witness has ***not*** applied the principles and methods reliably to the facts. See Fed. R. Evid. 702; see also Daubert, 509 U.S. at 589 (imposing a special obligation upon a trial court to "ensure that any and all scientific testimony or evidence is not only relevant, but reliable"); Kuhmo Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999) (Daubert's "gatekeeping" obligation applies not only to "scientific" testimony but to all expert testimony).

---

[1] The admissibility of expert testimony in a federal court sitting in diversity jurisdiction is a procedural matter governed by the Federal Rules of Evidence. See e.g., Scott v. Sears, Roebuck & Co., 789 F.2d 1052, 1054 (4th Cir. 1986).

5

### 1. The Opinions Contained in the Lockhart Report Are Not the Product of Reliable Principles and Methods.

Under Daubert, the trial court must determine whether the methodology employed by the proposed expert has been "tested" for reliability. Daubert, 509 U.S. at 593. In making this inquiry, the court considers several factors: (1) whether the methodology "has been subjected to peer review and publication," (2) the "known or potential rate of error" when employing the methodology, and (3) whether the methodology has been "generally accepted" within the industry. Id. The Lockhart Report indicates that Mr. Lockhart was given the assignment "of performing an investigation to determine if delays incurred in the construction of the Project were the result of the actions or inactions of NWC." (Ex. 2, p. 4.) In performing this assignment, Mr. Lockhart, does not identify or more importantly, employ industry accepted principles or methods to analyze construction delays.

As an initial matter, the Lockhart Report entirely fails to identify what methodology it employs to perform the delay analysis. Indeed, the "Methodology" section of the Lockhart Report generally describes Mr. Lockhart's background and states that "in the performance of the investigation and analysis Mr. Lockhart reviewed over fifteen boxes of project documentation which included project schedule, Turner Daily reports, subcontractor daily reports, contract drawings, contract specifications, correspondence between Turner and subcontractors as well as correspondence between Turner and NRECA, the National Regional Electrical Cooperative Association, (the "Owner") the owner of the property." (Ex. 2, p. 5.) The "Methodology" section, however, does not identify what methodology Mr. Lockhart purports to utilize in the report. (Ex. 2, p. 5.)

More importantly, the methodology actually employed by Mr. Lockhart is fatally flawed in that it does not conform to the construction industry standard to analyze delay. Specifically,

6

the Lockhart Report is devoid of "critical path analysis" which is essential to analyzing construction delay. See Titan Pacific Construction Corp. v. United States, 17 Cl Ct. 630, 1989 WL 78828 (1989), aff'd, 899 F.2d 1227 (Fed. Cir. 1990) (Court rejected expert testimony on delay because expert did not utilize proper critical path analysis). In Youngdale & Sons Construction Co., Inc. v. United States, 27 Fed.Cl. 516, 550 (1993) the Court of Federal Claims, described the critical path method in the following manner:

> Essentially, the critical path method is an efficient way of organizing and scheduling a complex project which consists of numerous interrelated separate small projects. Each subproject is identified and classified as to the duration and precedence of the work. (*E.g.*, one could not carpet an area until the flooring is down and the flooring cannot be completed until the underlying electrical and telephone conduits are installed.) The data is then analyzed, usually by computer, to determine the most efficient schedule for the entire project. Many subprojects may be performed at any time within a given period without any effect on the completion of the entire project. However, some items of work are given no leeway and must be performed on schedule; otherwise, the entire project will be delayed. These latter items of work are on the "critical path." A delay, or acceleration, of work along the critical path will affect the entire project.

(citing Haney v. United States, 230 Ct. Cl. 148, 167-68, (1982)). It stated further that:

> In order to calculate delay damages, it is necessary to determine which work items on the...project were in the critical path and the time period that these work items remained on the critical path. The reason that the determination of the critical path is crucial to the calculation of delay damages is that only construction work on the critical path ha[s] an impact upon the time in which the project was completed....Delay involving work not on the critical path generally had no impact on the eventual completion days of the project.

Youngdale, 27 Fed.Cl. at 550 (citing G.M. Shupe, Inc. v. United States, 5 Cl.Ct. 662, 728 (1984)). In short, the first step to establish the integrity and accuracy of the delay analysis is consideration of **all** activities to determine which were on the critical path and the period which such items remained on the critical path. Youngdale, 27 Fed.Cl. at 550. The critical question is delay to final project completion, not to an individual activity. "Essential to a determination that

7

an activity belongs on the critical path of a project is an understanding of how that activity affects other activities." Mega Const. Co., Inc., v. U.S., 29 Fed. Cl. 396, 427 (1993). To do so, the analysis must consider the "interrelationship between [] preceding and succeeding activit[ies]." Id. As noted by leading commentators, "any analysis that fails to take into consideration the effect of all delays to the critical path will be rejected." Wickwire & Warner, Proving (and Defending) Time Impact Claims, in Managing and Litigating the Complex Surety Case, 443 (1998).

Not only to have the Courts and leading industry commentators set forth parameters for proper delay analysis, Mr. Lockhart himself has enumerated the requirements for delay analysis in previous litigation. Specifically, Mr. Lockhart was retained as an expert by J.D. Long Masonry, Inc. ("Long Masonry") in litigation with Costello Construction Company of Maryland, Inc. ("Costello") before this Court, Costello Construction Company of Maryland, Inc. v. J.D. Long Masonry, Inc., Case No. 1:05-cv-742. In that matter, Mr. Lockhart provided expert testimony to rebut (the "Lockhart Rebuttal Report") the expert report of David Costello (the "Costello Report"). A copy of the Lockhart Rebuttal Report is attached as Exhibit 4. In his report, Mr. Lockhart criticizes the methodology employed in the Costello Report on the following bases:

- The Costello Report did not identify or consider all delays to the project schedule.

- The Costello Report did not incorporate all of the delays to the project schedule into the analysis.

- The Costello Report did not consider the time impact of owner-directed changes and owner related delays.

- The Costello Report did not incorporate into his report factors beyond Long's control that impacted or delayed its performance. Specifically, the Costello Report did not consider the following: (i) the precast materials

8

>were delivered late, (ii) once the precast materials were delivered they needed to be refabricated because there were design failures, and (iii) there were major issues relating to the installation of the relieving angles.

(Ex. 4, pp. 2 – 28.) The analysis contained in the Lockhart Report falls prey to the same deficiencies Mr. Lockhart noted in the Lockhart Rebuttal Report and therefore should be excluded.

In the "Analysis" section, the Lockhart Report explains that "[t]he analysis of the delays incurred for the project was conducted by comparing when activities were schedule with when activities were actually performed." (Ex. 2, p. 6.) Specifically, the Lockhart Report's analysis focuses on four "defined time period[s]" from October 4, 2004 to June 15, 2005 – the time period when National was performing at the Project -- which Mr. Lockhart defines as "windows." (Ex. 2, p. 6.)

The Lockhart Report does not consider all project activities to determine which were on the critical path and the period which such items remained on the critical path. Youngdale, 27 Fed.Cl. at 550. A proper critical path analysis must consider whether there were concurrent delays and how the concurrent delays affected the critical path. Mega Const., 29 Fed. Cl. at 435 (Court denied the plaintiff's delay claim because the claimant's expert's analysis failed to include proper analysis of potential concurrent delays); Techdyn Systems v. Whittaker Corp., 245 Va. 291, 296 (Va. 1993) (analysis must consider other delays). The Lockhart Report ignores concurrent delays.[2]

For example, in project meeting minutes dated December 22, 2004, Turner claims that the "Impact from delayed start on underpinning is 18 days" A copy of the December 22, 2004

---

[2] In an effort to justify the failure to consider concurrent delays, the Mr. Lockhart contends that he must only analyze concurrent delays for which National submitted a claim. (See Ex. 2, pp. 7 - 10.) Mr. Lockhart's position is contrary to the well-established tenet of critical path analysis that all delays including concurrent must be considered. Mega Const., 29 Fed. Cl. at 435.

9

meeting minutes is attached as Exhibit 5. Turner subsequently revised the duration of the alleged delay to 27 days due to the absence of approval from JBG on the Sheeting, Shoring, and Underpinning plans and approval of the revised easement agreement." A copy of the letter is attached as Exhibit 6. Further, on January 31, 2005, Turner writes the sheeting and shoring subcontract, Steele Foundations, and claims that Steele Foundations "is not proceeding at sufficient pace to meet the contract schedule…Our most recent review of the schedule shows that you are at least eight weeks behind." A copy of the January 31, 2005 letter is attached as Exhibit 7. In the same letter, Turner states: "We realize that the Sheeting and Shoring activities and Excavation activities are interdependent, Turner have requested that you and Excavation subcontract participate in further develop of the recovery schedule, as soon as possible." (Ex. 7.) Here, Turner admits the interdependence of these subcontractor activities but yet the Lockhart Report fails to consider this concurrent delay.

The Lockhart Report also fails to consider the affect of other well documented delays that ran concurrent to National's performance. Turner claims that the start of footing excavation was delayed by the Owner's failure to obtain the Foundation to Grade Permit. A copy of the letter is attached as Exhibit 8. The report also fails to consider delays to the concrete subcontractor, Miller & Long's performance. Copies of the Miller & Long daily reports are attached as Exhibit 9.

In addition to ignoring concurrent delays, the Lockhart Report does not consider delays at the Project that preceded or succeeded National's performance. For example, the Lockhart Report uses as a "baseline schedule" NR01 schedule dated October 26, 2004. (Ex. 2, p. 6.) Mr. Lockhart admits that this schedule "indicates time was lost on the original completion due to delays by the owner issuance of the Notice to Proceed." (Ex. 2, p. 6.) Yet, Mr. Lockhart does not

10

analyze how the preceding delays affected the performance of other subcontractors including National or how the preceding delays affected final project completion. <u>Mega Const. Co.</u>, 29 Fed. Cl. at 427.

The Lockhart Report also fails to analyze succeeding delays. Indeed, documents produced by Turner in connection with this matter and a lawsuit between Turner another subcontractor on this project reveal other delays occurred subsequent to June 15, 2005, the date that the Lockhart Report's delay analysis ends:

- June 20, 2005 letter from Turner to the Owner explaining that the Jefferson Building encroaches into the foundation of the NRECA property and providing notice of delay.

- August 26, 2005 letter from Turner to the Owner providing notice of delays due to "incomplete, incorrect and uncoordinated Architectural, Structural, civil and Landscape drawings for the P1 and Plaza levels."

- September 20, 2005 letter from Turner to the Owner providing notice of 20 days of delay due to Amendment No. 11.

- December 19, 2005 letter from Turner to the Owner providing notice of 19 days of delay due to delayed start of precast.

- December 19, 2005 letter from Turner to the Owner providing notice of 21 days of delay due to the Plaza Concrete Structure Delay.

- January 11, 2006 Notice of Default from the Owner to Turner citing Turner poor management of the submittal process, missing submittal deadlines, late procurement of trade subcontractor, failure to meet precast deadlines, unwillingness or inability to manage the LEED program, and failure to staff the Project as promised.

Copies of these documents are attached as Exhibit 10.

Further, the settlement agreement between Turner and the Owner (the "Turner/Owner Settlement Agreement") indicates that there was 140 days of delay to substantial completion and

11

that TCC is not responsible for 50 days of such delay. A copy of the Turner/Owner Settlement Agreement is attached as Exhibit 11. The Lockhart Report does not even mention the delays enumerated in the Turner/Owner Settlement Agreement much less analyze how these were calculated and how they effect his opinions.

Finally, in Litigation between Turner and its roofing subcontract for the Project, Gordon Contractors, Turner states in its Counterclaim at paragraphs 8 and 9:

> NRECA has assessed liquidated damages against Turner in the amount of $900,000 based upon the delays to the project completion and has in fact refused to pay Turner amounts otherwise due based upon such liquidated damages... The liquidated damages assessed against Turner by the Owner are due, in part, to delays caused by Gordon and those for whom it is responsible.

A copy of the Answer and Counterclaim is attached as Exhibit 12. The Lockhart Report does not consider the affect of any of these issues in its analysis. These failures are fatal to the reliability of the analysis.

### 2. The Lockhart Report is Not Based on Sufficient Facts or Data.

In addition to utilizing a flawed methodology, the Lockhart Report is unreliable because it is not based on sufficient facts or data. Specifically, as demonstrated above, the Lockhart Report ignores Turner records which demonstrate delays that precede, succeed and run concurrent to National's performance. (See infra pp. 6 – 11.) Further, despite availability, the Lockhart Report fails to take into account Turner's schedules and schedule updates for the entire project. In short, the Lockhart Report selectively chose what data and information to review in coming to its conclusions. Such selective analysis is improper. Titan Pacific, 17 Cl Ct. at 637-38 (rejecting expert delay analysis where the expert ignored facts and data regarding the construction project).

### 3. The Lockhart Report Does Not Apply the Principles and Methods Reliably to the Facts.

As demonstrated in above, the Lockhart Report should be excluded because it fails to employ reliable analysis and consider all relevant facts. These deficiencies make a reliable application of the methodology to the facts impossible.

### II. The Lockhart Report and Krafft Report Should be Excluded as Turner Failed to Identify and Produce All Documents Considered and/or Relied Upon in Accordance with Fed. R. Civ. P. 26(a)(2)(B) and NWC's Document Requests.

Under Rule 37(c)(1) "a party that without substantial justification fails to disclose information required by Rule 26(a)...is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). The Rule goes on to provide that the Court, may impose any other sanction in addition to or in lieu of these sanctions including those enumerated in Rule 37(b)(2)(A), (B) and (C). Fed. R. Civ. P. Rule 31(c)(1). These sanctions include striking the pleading. Fed. R. Civ. P. 37(b)(2)(C).

The Court should strike or exclude the Lockhart Report and the Krafft Report because Turner failed to comply with the disclosure requirements of Rule 26(a)(2)(B) which requires that an expert reports contain a complete statement of "the data or other information considered by the witness in forming the opinions." Fed. R. Civ. P. 26(a)(2)(B). The Rule requires that all data and information be identified regardless of whether it was actually relied upon by the expert. Fed. R. Civ. P. 26(a)(2)(B). Rule 26 has also been interpreted to require production of all privileged information, work product and drafts of the reports. Trigon Ins. Co. v. U.S., 204 F.R.D. 277 (E.D. Va.2001) (all documents considered must be disclosed not just those relied upon this includes privileged information, work product and drafts).

13

Both reports fail to meaningfully identify the documents relied upon and/or considered. Specifically, the Lockhart Report indicates that "Mr. Lockhart reviewed over fifteen boxes of project documentation which included project schedule, Turner Daily reports, subcontractor daily reports, contract drawings, contract specifications, correspondence between Turner and subcontractors as well as correspondence between Turner and NRECA, the National Regional Electrical Cooperative Association, (the "Owner") the owner of the property." (Ex. 2, p. 5.) Similarly, Section VI of the Kraft Report provides a list of "<u>DOCUMENTS AND OTHER INFORMATION RELIED UPON IN FORMING OPINIONS</u>" which identifies documents such as "[s]elected vendor invoices and cost documentation" and "selected Turner internal cost charging reports." (Ex. 3, p. 4.) These general descriptions leave NWC guessing what documents the experts considered or relied upon.

Furhter, the Krafft Report's identification is insufficient in that it only includes documents "relied upon" when the Rule expressly requires that all documents considered be identified. Trigon Ins. Co., 204 F.R.D. 277.

In addition to not properly identifying the documents considered by the experts, Turner failed to make available all of the documents as required under the Rule and by National's document requests to Turner. Specifically, National requested "[a]ll documents provided to, shown to, received from, or prepared by any person you retained or intend to retain as an expert and/or consultant including, but not limited to, fee arrangements, reports, and correspondence(s)." (Ex. 1, No. 4). The Lockhart Report indicates that 15 boxes of documents were reviewed by Mr. Lockhart. Turner has not produced or made available these documents. Further, Mr. Lockhart indicates that he reviewed subcontractor daily reports. Turner has not even produced subcontractor daily reports as part of its document production to National.

14

Additionally, Turner has not produced any drafts of the Lockhart Report, Mr. Lockhart's work product or communications between Mr. Lockhart and counsel.

Similarly, Turner has failed to produce or make available all of the documents considered by Mr. Krafft. Since National filed its Motion to Compel, Turner has produced select documents but still has not produced vendor invoices, cost documentation, draft reports, work product and communications between Mr. Krafft and counsel.[3]

## CONCLUSION

Based on the foregoing, National respectfully requests that this Honorable Court grant its Motion to Strike the Turner's Expert Reports and strike the Lockhart Report and Krafft Report. .

Respectfully submitted,

**NATIONAL WRECKING CORPORATION**
By Counsel

_____/s/_____
Stephen M. Seeger (VSB # 40548)
Seth A. Robbins (VSB # 45807)
Michael C. Zisa (admitted *pro hac vice*)
Attorneys for National Wrecking Corporation
Quagliano & Seeger, P.C.
2620 P Street, N.W.
Washington, D.C. 20007
Phone: (202) 822-8838
Fax:   (202) 822-6982
Email: Sseeger@quagseeg.com

---

[3] In response to National's Motion to Compel, Turner agreed to produce the outstanding documents but at the time of filing such documents have not been produced. To the extent that the documents are produced by Turner, National will withdraw this portion of the motion as moot.

## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing Memorandum in Support of Motion to Strike was hand-delivered, on September 7, 2007, to:

>Jeffrey Mitchell Hummel, Esq.
>Z. Taylor Shultz, Esq.
>Attorneys for Turner Construction Company
>Seyfarth Shaw, LLP
>815 Connecticut Ave NW – Suite 500
>Washington, DC 20006
>Phone: (202) 463-2400
>Fax: (202) 828-5393
>E-mail: jhummel@seyfarth.com

>_____/s/_____
>Stephen M. Seeger (VSB # 40548)
>Seth A. Robbins (VSB # 45807)
>Michael C. Zisa (admitted *pro hac vice*)
>Attorneys for National Wrecking Corporation
>Quagliano & Seeger, P.C.
>2620 P Street, N.W.
>Washington, D.C. 20007
>Phone: (202) 822-8838
>Fax:    (202) 822-6982
>Email: Sseeger@quagseeg.com

16